**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN S. GRABER,** | : | **CASE NO. 4:04CV1314** |
| Petitioner, | : | |
| vs. | : | **Judge** |
| **DAVID BOBBY,** | : | |
| Respondent. | : | |

CRIME VICTIM'S MOTION FOR THE PROMPT SUBSTITUTION OF
*GRABER V. BOBBY* WITH A REDACTED VERSION OMITTING THE
VICTIM'S NAME AND OTHER PRIVATE INFORMATION

Crime Victim Jane Doe, by and through undersigned counsel, moves this Court to:

1. Withdraw the current version of *Graber v. Bobby* issued February 9, 2006;

2. Issue a Redacted Opinion that substitutes "Jane Doe" and/or "John Doe" for the full name of the victim(s) and redacts any reference to victim identifying information and intimate details of the crimes that are immaterial to the resolution of the legal issues addressed in the Opinion;

3. Issue an order requiring that the redacted opinion supersede the current version of the Opinion;

4. Direct the Clerk of Court to ensure that the Redacted Opinion is promptly submitted for the current version available in the Court's electronic filing system;

5. Direct the Clerk of Court to ensure that the Original Opinion is no longer available in the cache of the Court's electronic filing system;

6. Require the immediate removal of the current Opinion from any publicly available website that publishes it; and

1

7. Provide notice to any print publisher of the Federal Supplement that the Redacted

Opinion should be used in any future reprints.

The reasons for this Motion are more fully set forth in a Memorandum in Support, which

is attached hereto and incorporated herein.

Respectfully submitted,

/s/ Bobbie Yeager
Bobbie Yeager (0085165)
Ohio Crime Victim Justice Center
3976 North Hampton Drive
Powell, Ohio 43065
P: 614-848-8500
F: 614-848-8501
byeager@ocvjc.org
*Counsel for Crime Victim*

## MEMORANDUM IN SUPPORT

### I.      STATEMENT OF FACTS

In 2001, Petitioner was convicted in Stark County, Ohio of committing multiple sex crimes against Crime Victim Jane Doe, along with another crime victim. *State v. Graber*, 2003 Ohio App. LEXIS 102, *6 (5th App. Dist. Jan. 13, 2003). Petitioner filed numerous actions for appellate review, each of which affirmed his convictions. *Id.*; *State v. Graber*, 2003 Ohio App. LEXIS 4828, *5 (5th App. Dist. Oct. 3, 2003), *appeal not accepted, State v. Graber*, 101 Ohio St.3d 1466 (Ohio 2004), *State v. Graber*, 101 Ohio St.3d 1467 (Ohio 2004), *cert. denied, State v. Graber*, 125 S. Ct. 868 (2005); *see also State v. Graber*, 102 Ohio St.3d 1485 (Ohio 2004).

In 2004, Graber filed a petition for post-conviction relief in the state trial court, pursuant to O.R.C. § 2953.21, which was denied as untimely. In 2005, the Ohio court of appeals affirmed. *State v. Graber*, 2005 Ohio App. LEXIS 2290 (5th App. Dist. May 16, 2005). Also in 2004, Graber filed the underlying petition, which was ultimately denied.

Recently, Jane Doe learned of this action and this Opinion, and that her full name, another victim's name, and details of the criminal offenses were available to the public.

### II.     LAW AND ARGUMENT

#### a.  TAILORED MODIFICATIONS TO THE COURT'S OPINION ARE NECESSARY TO PROTECT THE VICTIM'S SUBSTANTIAL PRIVACY RIGHTS AND INTERESTS.

Crime Victim Jane Doe has constitutional, common law, and statutory privacy rights and interests that protect her from the disclosure of personal information in publicly accessible court records. As written, the Opinion violates these rights and interests. This has caused, and will continue to cause, harm to Jane Doe. To remedy these rights violations and protect Jane Doe

3

from future harms, the Court must make certain, narrow redactions to the original opinion and order that the redacted version replace the electronic and paper copies of the original.

### i.  As Written, The Opinion Violates Jane Doe's Constitutional, Statutory, And Common Law Rights.

Federal law guarantees Jane Doe a robust set of privacy rights. As written, the opinion violates these rights by making public that which Jane Doe is entitled to keep private.

### 1.  Disclosure of Jane Doe's Name and Private Detailed Information About the Crime in the Opinion Violates Jane Doe's Constitutional and Common Law Rights to Privacy.

Jane Doe has a constitutional and common law right to privacy in matters of a personal nature. *See Whalen v. Roe*, 429 U.S. 589, 599 (1977) (holding that the constitutional right to privacy includes the "interest in avoiding the disclosure of personal matters"); *Barbe v. McBride*, 521 F.3d 443, 459 (4th Cir. 2008) (recognizing that the government has "a valid interest in protecting victims of sexual abuse from needless harassment, humiliation, and 'unnecessary invasions of privacy'"). This right is often referred to as the right to "informational privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

The right to informational privacy encompasses Jane Doe's legal interest in the nondisclosure of certain personal information. *Id.* at 684; *see Florida Star v. B.J.F.*, 491 U.S. 524, 536 (1989) (finding that "it is undeniable" that protecting privacy of victims of sexual offenses is a "highly significant" state interest and that such an interest, under certain circumstances, may warrant imposition of civil sanctions for publication of rape victim's name); *Eastwood v. Dep't of Corrections*, 846 F.2d 627, 630-31 (10th Cir. 1988) (stating that the right to informational privacy is implicated when an individual is forced to disclose information regarding personal sexual matters).

Federal courts have regularly relied on the privacy rights and interests of crime victims to

support the nondisclosure of identifying information in court records, including the victim's name. *See, e.g., United States v. Tsosie*, No. CR 18-0738 JB, 2018 WL 2745114, *5 (D. N.M. June 6, 2018) (unpublished) (granting protective order to require redaction of child-victim's name and personal information because "[k]eeping the confidential material confined to only those who need it, and requiring that [the victim's] name and personal information be redacted in public filings protects [the victim's] privacy interest"); *Carson v. N.J. State Prison et. al.*, Civ. No. 17-6537(RMB), 2018 WL 4554465, *2 (D.N.J. Sept. 21, 2018) (unpublished) (sealing court documents replete with victims' identifying information to protect the victims' privacy). Indeed, courts routinely refer to victims by a pseudonym or the victim's initials to protect the victim's privacy rights and interests. *See, e.g., Florida Star*, 491 U.S. 524 at n.2; *United States v. Loew*, 593 F.3d 1136, 1137 n.1 (9th Cir. 2010); *United States v. Patel*, 2015 WL 6689588, *1 (E.D. Cal. Oct. 29, 2015) (unpublished); *United States v. Lowe*, No. 2:14–cr–00004–JAD–VCF, 2014 WL 5106053, *6 (D. Nev. Oct. 10, 2014) (unpublished); *United States v. Darbasie*, 164 F. Supp. 3d 400, 402 n.2 (E.D.N.Y. 2016); *United States v. Dileo*, 58 F. Supp. 3d 239, 24 n.1 (E.D.N.Y. 2014); *United States v. Darcy*, No. 1:09CR12, 2009 WL 1470495, *1 (W.D.N.C. May 26, 2009) (unpublished).

Jane Doe's right to informational privacy also protects against the disclosure of intimate details of the crime committed against her. *See, e.g., Bloch*, 156 F.3d at 686 (concluding that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical [sic] purpose is being served"); *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (holding that a rape victim has a constitutionally protected privacy interest in videotape depicting her rape).

Here, the Court's Opinion violates Jane Doe's right to informational privacy to the extent it discloses Jane Doe's identifying information and the personal, intimate details of the crimes committed against her.

>    2.    *Disclosure Of Jane Doe's Name and Private Information in the Opinion Violates Jane Doe's Constitutional Right to Access the Courts.*

In addition to the federal constitutional right to privacy, Jane Doe—like all individuals—has a fundamental constitutional right to access the courts. *See Chappell v. Rich,* 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly a constitutional right, grounded in the [right to petition clause of the] First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment and/or the Fourteenth Amendment"); *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983) (noting that access to courts is a fundamental right). The public disclosure of a crime victim's identity, personal information and the intimate details of the crime committed against the victim interferes with this right.

The fear of public disclosure is known to cause victims to forfeit the pursuit of justice against their offenders. *See Globe Newspaper Co. Inc. v. Clerk of Suffolk Cnty Superior Court*, No. 01-5588*F, 2002 WL 202464, *6 (Mass Super. Feb. 4, 2002) (unpublished) ("If the identity of [sexual abuse] victims are not protected by the courts, then their access to the courts will be severely diminished, because they will not be able to turn to the courts for relief from or compensation of their emotional injuries without aggravating those same injuries."); *see also Carson*, 2018 WL 4554465, at *2 ("The public interest in victims coming forward to assist in prosecutions of crime is likely to suffer if victims' privacy rights are not protected [by sealing documents replete with victim identifying information]."); *cf. Wilmink v. Kanawha County Board of Education*, No. 2:03-cv-179, 2006 WL 456021, *3 (S.D. W. Va. Feb. 23, 2006) ("If

6

individuals are assured their identities will be protected in situations like those at issue in this [sexual abuse case] and related cases, they are more likely to come forward and candidly recount their experiences.").

Here, if Jane Doe is not allowed to protect her privacy through the redaction of identifying and personal information from the Opinion, Jane Doe will have been forced to pay a steep price for reporting the crime – i.e., the post hoc relinquishment of her constitutional rights. Jane Doe's exercise of the right to access the criminal justice system does not require this.

> 3. *Disclosure of Jane Doe's Name and Private Information in the Opinion Violates Jane Doe's Rights to Privacy, Dignity, and Fair Treatment Under the Crime Victims' Rights Act and Child Victims' and Child Witnesses' Rights Act.*

Under the Crime Victims' Rights Act, 18 U.S.C. § 3771 (CVRA), the Victim has "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). This statutory guarantee is a broad right to fair treatment within the criminal justice system and a recognition of the enforceable rights to privacy and dignity. As one court has noted, this right reflects Congress's determination that "failure to treat a victim with fairness and with respect to privacy works a clearly defined and serious injury to the victim." *United States v. Patkar*, Cr. No. 06-00450 JMS, 2008 WL 233062, *5 (D. Haw. Jan. 28, 2008) (unpublished). Courts have found that this protection in the CVRA favors the nondisclosure of crime victims' identifying information to the media and public. *See, e.g., Madoff*, 626 F. Supp. 2d at 426 (concluding that victims' privacy interests in nondisclosure of their personal information to media was significant given victims' opposition to disclosure and court's obligation under the CVRA to treat victims fairly and with respect for their dignity and privacy); *Patkar*, 2008 WL 233062, at *4-5 (relying on victims' right, under the CVRA, to be treated with fairness and

7

respect for his privacy when upholding a protective order barring disclosure beyond parties of discovery materials related to underlying extortion of the victim).

Indeed, several federal courts have relied on this right to be treated with fairness and respect for the victim's dignity and privacy to support the decision to exclude the victim's identifying information from court documents. *See, e.g., United States v. Clark*, 335 Fed. App'x 181, 184 (3d Cir. 2009) (unpublished) (concluding that redaction of victims' names and names of their family members from victim impact statements was consistent with victims' right, under the CVRA, to be treated with respect for their dignity and privacy); *Gueits v. Kirkpatrick*, 618 F. Supp. 2d 193, 198 n.1 (E.D.N.Y. 2009), *rev'd on other grounds*, 612 F.3d 118 (2d Cir. 2010) (deciding, sua sponte, to not publish the victim's name in a court decision "out of respect for her dignity and privacy," as guaranteed by the CVRA); *Tsosie*, 2018 WL 2745114, at *5 (barring disclosure of the child-victim's name and personal information in public court records based, in part, on victims' right to privacy under the CVRA); *United States v. Robinson*, No. 08-10309-MLW, 2009 WL 137319, *3 (D. Mass. Jan. 20, 2009) (finding that the CVRA provides a meaningful right to privacy that weighs against disclosure of the extortion victim's identity to press or in publicly accessible court document); *United States v. Turner*, 367 F. Supp. 2d 319, 328-29 (E.D.N.Y. 2005) (noting that "individuals covered by the CVRA have done nothing that warrants unwanted intrusion into their lives, and they may have good reason either to be concerned about the public listing of their names and contact information or simply prefer not to be reminded of their victimization each time the court schedules a proceeding").

The Court has an independent obligation under the CVRA to ensure that Jane Doe is afforded her statutory rights. 18 U.S.C. § 3771(b)(1). To meet this obligation, the Court must modify the Opinion to redact the Victim's private information from public view. *C.f. United*

*States v. Davies*, Crim. No. 07-436, Civ. No. 13-845, 2016 WL 2585667, *6 (W.D. Pa. May 5, 2016) (unpublished) (finding that the court met its duty to protect the child-victim's right to privacy under 18 U.S.C. § 3509(d)(1) when it granted the government's motion to strike/redact, thereby placing the original submissions at issue under seal, and ordering defendant to redact the copy).

In addition to the privacy protections guaranteed by the CVRA, federal law entitles child-victims, like Jane Doe, to protections under the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509. Among other things, Section 3509 requires that any paper disclosing the child-victim's name or other identifying information must be filed under seal. *Id.* at § 3509(d)(2). It also authorizes courts to courts to take additional measures to protect the identity of a child if it "determines that there is a significant possibility that such disclosure would be detrimental to the child." *Id.* at § 3509(d)(3)(A).

### ii. As Written, the Opinion Has Caused and Will Continue To Cause Jane Doe Harm.

In addition to violating Jane Doe's legal rights, public disclosure of Jane Doe's identity and the intimate details of the crimes committed against her has exacerbated her original injuries and subjected her to new secondary harms. *See* Ann Bartow, *A Feeling of Unease About Privacy Law*, 155 U. Pa. L. Rev. PENNumbra 52, 61 (2007) (stating that individuals may be "harmed in a significant, cognizable way when their personal information is distributed against their will"); *see also Turner*, 367 F. Supp. 2d at 328 (concluding that filing a list of victims' names and contact information "invades the privacy of victims who have no authority to prevent the government from proceeding with a prosecution and should not be victimized by the criminal justice process itself"); *United States ex. rel. Latimore v. Sielaff*, 561 F.2d 691, 694-95 (7th Cir. 1977) ("The ordeal of describing an unwanted sexual encounter before persons with no more

9

than a prurient interest in it aggravates the original injury."); *see generally* Dean J. Kilpatrick &
Randy K. Otto, *Constitutionally Guaranteed Participation in Criminal Proceedings for Victims:
Potential Effects on Psychological Functioning*, 34 Wayne L. Rev. 7, 25 (1987) (describing
victims' further victimization by the criminal justice system); *Protecting Victims' Privacy
Rights: The Use of Pseudonyms in Criminal Cases*, NCVLI Victim Law Bulletin (Nat'l Crime
Victim Law Inst., Portland, Or.) (2014) 1-2, available at https://law.lclark.edu/live/files/27405-
protecting-victims-privacy-rightsthe-use-of (discussing why victims' use of pseudonyms in
criminal cases is necessary to prevent secondary victimization).

Disclosure of a victim's private information in public court records or proceedings is
understood to cause victims psychological and emotional pain, as well as shame and
embarrassment. *See Doe v. Firn*, No. CV065001087S, 2006 WL 2847885, *5 (Conn. Super. Ct.
Sept. 22, 2006) ("To force the plaintiff to proceed without the protection of the pseudonym Jane
Doe would only subject the plaintiff to additional psychological harm and emotional distress.").
The victim's published association with the crime can also damage the victim's personal and
professional reputation. *See* Joel M. Schumm, *No Names Please: The Virtual Victimization of
Children, Crime Victims, the Mentally Ill, and Others in Appellate Court Opinions*, 42 Ga. L.
Rev. 471, 475-76 (2008) (noting that inclusion of victims' names and personal information in
judicial opinions is especially problematic now that Internet access is so pervasive because, inter
alia, "increased informational accessibility . . . is potentially devastating to personal and
professional relationships").

The harms are particularly acute when the underlying criminal act involved a violation of
the victim's privacy. *See Roe v. Indian Mountain School*, No. UWYCV146025387S, 2014 WL
7525521, *1-2 (Conn. Super. Ct. Dec. 1, 2014) (unpublished) (finding a compelling argument for

allowing a victim of sexual assault to proceed under a pseudonym where the complaint consisted "of acts of a very sensitive and personal nature" and the victim had "already been subjected to the loss of privacy by the very acts" alleged in the complaint).

The psychological and emotional toll of the public disclosure of a victim's private information is also heightened where the victim did not consent to this information being made public. *See Globe Newspaper Co. Inc. v. Clerk of Suffolk Cnty Superior Court*, No. 01-5588*F, 2002 WL 202464, *6 (Mass Super. Feb. 4, 2002) 2002 WL 202464, *6 (Mass. Super. Feb. 4, 2002) (unpublished) ("[F]or many victims of sexual abuse, especially child sexual abuse, public revelation of the abuse, if not sought by them, victimizes them yet again."). When a victim's information is disclosed against the victim's will, the victim once more experiences a loss of control over everyday life. *See* Suzanne M. Leone*, Protecting Rape Victims' Identities: Balance Between the Right to Privacy and the First Amendment*, 27 New Eng. L. Rev. 883, 909-10 (1993) (stating that a victim's right to control personal information "'constitutes a central part of the right to shape the "self" that any individual presents to the world' and this right 'is breached most seriously when intimate facts about one's personal identity are made public against one's will . . . in defiance of one's most conscientious efforts to share those facts only with close relatives or friends'") (quoting Laurence H. Tribe, American Constitutional Law § 12-14, at 650 (1st ed. 1978)); *Commonwealth ex rel. Platt v. Platt*, 404 A.2d 410, 429 (Pa. Super. Ct. 1979) ("The essence of privacy is no more, and certainly no less, than the freedom of the individual to pick and choose for himself the time and circumstances under which, and most importantly, the extent to which, his attitudes, beliefs, and behavior and opinions are to be shared with or withheld from others." (internal citation omitted)).

In addition to causing new trauma and victimization, public disclosure of a crime victim's

private information in a court opinion interferes with the victim's ability to heal from the trauma of the original crime. *See* Paul Marcus & Tara L. McMahon, *Limiting Disclosure of Rape Victims' Identities*, 64 S. Cal. L. Rev. 1020, 1049 (1991) (noting that public disclosure of a rape victim's identity without the victim's consent strips the victim of his/her/their private and personal decisions and, consequently, slows the victim's healing process); Leone, 27 New Eng. L. Rev. at 910-11 ("Each victim has a unique healing process and the public disclosure of her identity could disrupt that process before the victim is ready.").

Jane Doe has suffered, and will continue to suffer, psychological and emotional trauma from her name and information being disclosed in the Opinion. Jane Doe's privacy interests, and the fact that she was a minor when the sex crimes were committed against her, far outweigh the public's right to access the Opinion in its current form.

Easy, electronic access to the Opinion amplifies these harms. *See* David L. Snyder, *Nonparty Remote Electronic Access to Plea Agreements in the Second Circuit*, 35 Fordham Urb. L. J. 1263, 1264-65 (2008) ("[W]idepsread electronic access to case files gives rise to security concerns previously unrealized in the era of paper records."); *see also Brownlee v. State*, 197 So.3d 1024, 1039 (Ala. Crim. App. 2015) (Joiner, J., concurring) (questioning value of publishing graphic recitation of facts of the victim's sexual abuse in its opinion and noting that courts "must exercise discretion in deciding whether a published opinion is necessary and, if so, how much factual detail should be included" given that "more published opinions are more accessible to the public than ever before").

Here, electronic access to the Opinion is available through multiple legal search engines, such as LexisNexis, and through a general search on web browsers causing Jane Doe severe emotional and psychological trauma.

The scale of this invasion of Jane Doe's privacy is potentially boundless because her information can be instantly shared with large audiences through e-mail, social networking websites like Facebook and Twitter, blogs, and other online forums. This risk of widespread dissemination combined with the permanency of information posted online makes the Opinion, as written, harmful to Jane Doe. *See* Kellie Wingate Campbell, *Victim Confidentiality Laws Promote Safety and Dignity*, 69 J. Mo. B. 76, 82 (2013) ("The permanency of information posted to the Internet either legitimately or maliciously makes it . . . important to safeguard confidential victim information[.]"); *Protecting Victims' Privacy Rights*, NCVLI Law Bulletin at 1 (detailing how the consequences associated with a victim's loss of anonymity in justice proceedings become more severe as court records become available online).

### iii.  Narrowly Tailored Redactions in The Court's Opinion Will Protect Jane Doe's Privacy-Related Rights and Interests.

Redactions to the Opinion are necessary to avoid further violating Jane Doe's rights and compounding her injuries. Although Jane Doe's name and identifying information have already been made public in the Opinion, and elsewhere in the record or in public court proceedings, this Court cannot ignore Jane Doe's need for—and rights to—redaction. Disclosure of this information in a publicly available, electronically published Opinion has established a permanent, ongoing privacy violation. As the Supreme Court observed, the continued possession of private materials "is of sufficient importance to merit constitutional protection." *Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992). Victims continue to suffer harm as long as their private information is, against their will, in the public's possession. *See* Bartow, 155 U. Pa. L. Rev. PENNumbra at 61 (stating that individuals may be "harmed in a significant, cognizable way when their personal information is distributed against their will"). Even in circumstances where "it is now too late to prevent, or to provide a fully satisfactory

13

remedy for, the invasion of privacy that occurred . . ., a court does have power to effectuate a partial remedy by ordering the [destruction and return of improperly obtained documents]." *Church of Scientology*, 506 U.S. at 13.

Indeed, redaction of Jane Doe's personal information from the Opinion is critical to protecting her privacy rights. *See, e.g., United States v. Charley*, 189 F.3d 1251, 1256 n.1 (10th Cir. 1999) (requiring the use of initials to identify minor-victims in the court's opinion, "to the extent it may assist in preserving [the victims'] privacy", even though the victims' names were fully disclosed on the record and in the parties' briefs); *United States v. Church*, 702 F. Supp. 2d 615, 617-18 (W.D. Va. 2010) (finding that disclosure of certain documents would violate the victim's privacy interests and that such documents should be sealed under 18 U.S.C. § 3509(d), even though some of "the factual information contained within these documents has already been incorporated into judicial opinions and elsewhere in the public record"); *Zink v. Commonwealth*, 902 S.W.2d 825, 828 (Ky. App. Ct. 1994) (observing that private identifying "information is no less private simply because that information is available someplace"). *But see Sparman v. Edwards*, 325 F. Supp. 3d 317, 318 (E.D.N.Y. 2018) (denying motion to require immediate removal of opinion in a rape case, where over twenty years had passed since opinion's entry on to public docket and opinion had been widely circulated in public domain, even though policies protecting privacy of child-victims of sexual assault favored sealing or redacting opinion); *United States v. Cousins*, 858 F. Supp. 2d 614, 619-20 (E.D. Va. 2012) (denying government's request to restrict electronic access of non-parties to trial transcripts from public trial that took place more than ten months earlier upon finding that the redaction request came "far too late to be meaningful" and noting that "the court cannot undo any potential impact of public disclosure of this

14

information").

Protecting Jane Doe's identity and victimization details is consistent with the Court's obligation to protect Jane Doe's privacy and dignity under the CVRA. *See Gueits*, 618 F. Supp. 2d at 198 n.1 (referring to rape victim as "the Victim" in a Report and Recommendation related to a habeas petition "out of respect for her dignity and privacy," even though the victim's name was known to the parties and appeared on the record (citing 18 U.S.C. § 3771(a)(8)); *see also Curry v. McNeil*, No. 3:08cv539/LAC/EMT, 2009 WL 395247, *2 (N.D. Fla. Feb. 17, 2009) (concluding that redaction of the victim's private information from court records was warranted in a habeas case to protect the victim's privacy, even though the victim's identity was publicly disclosed at the related criminal trial, and noting that "there is no need . . . for again subjecting the victim to public disclosure of the details of his or her victimization").

Here, the protection of Jane Doe's privacy-related rights and interests can be accomplished through narrowly tailored redactions to the existing Opinion, including the substitution of the victim's name with "Jane Doe" and the redaction of the names of other victims and relatives, redaction of any other identifiers, and of the intimate details of the criminal offenses. *See United States v. Gavin*, 959 F.2d 788, 792 (9th Cir. 1992) (ordering published opinion amended to redact the name of child-victim, sealing of all documents mentioning the name of the child victim, and ordering that redacted versions of those same documents serve as the public record in the case); *see also United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (modifying original opinion before publication by substituting pseudonyms for names of defendant-appellant and three others where defendant-appellant, a prison inmate, faced great risk of bodily harm from public disclosure of his true name and role as government witness); *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (finding modification of proposed opinion to substitute

defendant's name with pseudonym was warranted where petitioner had submitted credible evidence that he would likely be subjected to more violence if his name was revealed). To ensure that these modifications are meaningful, the redacted Opinion must replace existing electronic and paper copies of the original Opinion.

> **b.  THE RIGHTS AND INTERESTS IN FAVOR OF THE REQUSTED NARROWLY TAILORED REDACTIONS OUTWEIGH THE PUBLIC'S INTEREST IN ACCESS TO AN UNREDACTED OPINION.**

The Court has inherent discretion, as well as discretion under Federal Rule of Criminal Procedure 49.1(e), to redact Jane Doe's identity and other private details from the Opinion. Although the public's presumed right of access to court records limits this discretion, it is clear in this case that Jane Doe, as well as the public, have substantial interests in protecting Jane Doe's privacy. These interests outweigh the public's interest in accessing the information that Jane Doe seeks to redact.

> **i.  Courts Have Inherent and Rule-Based Discretion to Redact Jane Doe's Private Information from the Publicly Available Copies of the Opinion.**

When, as here, a crime victim seeks to vindicate their constitutional, common-law, and statutory rights through the redaction of certain private information in the court record, and those interests in redaction outweigh the public's right of access to the information, the Court can redact information. The public's presumed right of access to judicial documents is not absolute. *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). The presumption of access may be overcome when the interests in nondisclosure outweigh the interest in access. *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995) (*Amodeo II); Leap Systems, Inc. v. Moneytrax, Inc. et al.*, 638 F.3d 216, 221-22 (3d Cir. 2011). Courts have supervisory power over their records and files, and the decision to allow public access to court records is "best left to the sound discretion

of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99.

Courts also have express authority under Federal Rule of Criminal Procedure 49.1(e) to redact sensitive or private victim information from a court document upon a showing of good cause. Fed. R. Crim. Proc. 49.1(e); *see United States v. Davies*, 2016 WL 2585667, at *6 n.4 (noting that even if the privacy protections under 18 U.S.C. § 3509 calling for the redaction of the names of child-victims did not apply because the victims were no longer minors at the time of filing, the court had authority to issue a protective order under 49.1(e) to require the redaction based upon a showing of good cause). Rule 49.1 also governs the protection of information on appeal. Fed. R. App. Proc. 25(a)(5). Although Rule 49.1 does not expressly call for the redaction of the names of crime victims, this does not limit the ability of the victim to request such redaction, or for the court to order it, *sua sponte. United States v. Lowe*, No. 2:14–cr–00004–JAD–VCF, 2014 WL 5106053, *n.2 (D. Nev. Oct. 10, 2014) ("Although not expressly provided for in Federal Rule of Criminal Procedure 49.1, the names of crime victims are routinely redacted from court filings to protect the privacy interests of nonparty victims." (citations omitted)). Rule 49.1(a)(3) also requires the use of initials to identify minors in any electronically filed documents. Courts routinely rely on this provision to protect the privacy of child-victims. *See, e.g.*, *United States v. Broxmeyer*, 616 F.3d 120, n.2 (2d Cir. 2010); *United States v. Dotson*, 715 F.3d 576, n.1 (6th Cir. 2013); *Byrd v. Trombley*, 352 Fed. App'x 6, n.1 (6th Cir. 2009); *Earhart v. Koneth*, 589 F.3d 337, n.1 (6th Cir. 2009); *United States v. Kuzmin*, No. 317CR00034TMBDMS, 2017 WL 5197045, *1 n.1 (D. Alaska Nov. 8, 2017) (unpublished). When substituting a child-victim's initials pursuant to Rule 49.1(a)(3), some courts also order that the identities of other individuals, such as family members or the defendant, be concealed to

ensure the child-victim's anonymity. *See, e.g., Broxmeyer*, 616 F.3d 120 at n.2; *Dotson*, 715 F.3d at n.1.

The Advisory Committee Notes to Rule 49.1(e) explain that a court may order "more extensive redaction than otherwise required by the Rule, where necessary to protect against disclosure to nonparties of sensitive or private information." Fed. R. Crim. Proc. 49.1, Advisory Committee Notes. A showing of good cause under Rule 49.1(e) requires a demonstration that the privacy interests in favor of protection outweigh the public's right of access to the information. *See Konrad*, 2011 WL 1549494, at *5-6 (finding that defendant's request for the court to exercise its discretion, pursuant to Rule 49.1(e), to issue protective order for redaction of his private medical diagnoses from the Criminal Information required a balancing of defendant's interests in maintaining privacy against the common law right of public access in criminal cases); *Cousins*, 858 F. Supp. 2d at 618 (stating that analysis of a motion for a protective order to restrict electronic access under Rule 49.1(e) begins with the presumption that the public has a right to access judicial records and then balances countervailing interests).

Therefore, before exercising its inherent or rule-based authority to remove Jane Doe's private information from the Opinion, the Court must determine the weight to be given the presumption of access to such information, taking into account the public's interest in access. *Leap Systems*, 638 F.3d at 221-22; *Konrad*, 2011 WL 1549494, at *7-9. It must then weigh this presumption against any countervailing interests. *Leap Systems*, 638 F.3d at 221-23; *Amodeo II*, 44 F.3d at 147.

Here, because the public's interest in accessing Jane Doe's private information at this stage of the criminal proceedings is slight, and Jane Doe and the public have substantial interests in maintaining Jane Doe's privacy, the balance weighs in favor of modifying the Opinion to

redact the compromising information. In addition, the balance of these interests establishes good cause for a protective order calling for redaction under Rule 49.1(e).

### ii. The Public's Interest in Access to Jane Doe's Private Information in the Opinion is Slight Given the Nature of the Information.

The weight to be given to the public's interest in accessing Jane Doe's name and other private information in the Opinion turns on the role of the information in the court's exercise of its Article III power and the value of such information to those monitoring the courts. *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (*Amodeo III*). The public's exposure to the information, the degree to which the information was crucial to the court's exercise of its duties, and the nature of the crime at issue may also impact the weight of the presumption. *United States v. Hardy*, Crim. No. 09-151, 2011 WL 1877671, *4-5 (W.D. Pa. May 16, 2011). Generally, courts have found that the public's right of access is strong with regard to judicial records in criminal cases because the need for public oversight of the government's process of investigating and prosecuting crimes. *United States v. Konrad,* No. 11–15, 2011 WL 1549494, at *8, (E.D. Pa. Apr. 19, 2011) (citations omitted).

Notably, however, courts tend to agree that redaction of a victim's private details is appropriate where the information sought to be protected does not interfere with the public's access to information regarding the legal issues in the case or the court's performance in resolving them. *See, e.g., Ayers*, 789 F.3d 944 at 946 (finding that use of a pseudonym to identify habeas petitioner was warranted, in part, because "[a]lthough the public does not know Petitioner's name, any reader of the Federal Reporter may consider the evidence in aggravation and mitigation, as outlined in detail in our opinion, and determine for himself whether our assessment of its strength was correct"); *United States v. Munir*, 953 F. Supp. 2d 470, 478 (E.D.N.Y. 2013) ("Redaction is particularly appropriate where, as here, the information that will

19

be withheld from the public was immaterial to the sentencing decision."); *United States v. Starr*, No. 10 CR 520 (SAS), 2011 WL 1796340, *1 (S.D.N.Y. May 2, 2011) (finding that balance favors sealing the victim's restitution submissions where, *inter alia*, the court never relied on the submissions in making any decision, with regard to restitution or otherwise); *see also United States v. Hardy*, Crim. No. 09-151, 2011 WL 1877671, *4 (W.D. Pa. May 16, 2011) (denying defendant's request for sealing the transcript from his sentencing upon finding that the presumption of access was strong because the court considered the material at issue when determining defendant's sentence).

The private details that Jane Doe seeks to protect from public disclosure, including her name, were immaterial to the Court's decisions regarding whether the defendant was entitled to a writ of habeas corpus. Removing this information does not interfere with the public's ability to oversee the process by which the government investigates and prosecutes crime, nor does it otherwise interfere with the public's health or safety. For all of these reasons, the public's interest in accessing Jane Doe's identity and personal information is slight.

### iii. There Are Substantial Rights and Interests that Weigh in Favor of the Proposed Redactions to the Court Opinion.

In contrast to the minimal interest in access, Jane Doe and the public have substantial rights and interests in redacting the Victim's identifying and personal information from the Opinion.

#### 1. *Jane Doe Has Substantial Privacy and Safety Rights and Interests that Weigh in Favor of the Proposed Redactions.*

Jane Doe has substantial, legally protected rights and interests that weigh in favor of redacting the Opinion. Courts have found that a victim's interest in avoiding the unnecessary, secondary traumas and revictimizations detailed above weighs heavily in favor of protecting the

20

victim's identity and private information in court records. *See, e.g., United States v. Dickerson*, No. 6:12-cr-228-Orl-37KRS, 2012 WL 6186732, *2 (M.D. Fla. Dec. 12, 2012) (finding that protective order barring disclosure of minor-victim's name and other identifying information was warranted where such disclosure would cause victim embarrassment and psychological harm); *Carson*, 2018 WL 4554465, at *2 ("The minor victims have a private interest in protecting against disclosure of the sexual offenses committed against them because disclosure may cause further emotional trauma."); *Wilmink*, 2006 WL 456021, at *2 (noting that "[p]lainiff's primary concern in redacting [victim] identities is to avoid the totally unnecessary emotional pain that all of these persons have expressed, repeatedly and without equivocation, regarding their desire to maintain privacy"); *see also Globe Newspaper Co. v. Superior Court for Norfolk Cnty*, 457 U.S. 596, 607 (1982) (recognizing that there is a compelling interest in protecting minor-victim of sexual assault from additional physical and psychological intrusion that comes with public trial).

Additionally, the interest in avoiding public humiliation and embarrassment through the disclosure of private information in court records weighs heavily against the public's right of access when the individual seeking anonymity is a crime victim. *See, e.g., Doe v. St. Clair County*, Civil No. 07-142-DRH, 2007 WL 1097945, *1 (S.D. Ill. Apr. 12, 2007) (allowing sexual abuse victims to proceed under pseudonyms given nature of alleged crimes and "tremendous potential impact of being subject to public scrutiny and embarrassment"); *United States v. Kelly*, No. 07-CR-374, 2008 WL 5068820, *2 (E.D.N.Y. July 10, 2008) (issuing protective order prohibiting public disclosure of sex-trafficking victims' names or identifying information, where concealing identities was necessary to protect them from public humiliation and embarrassment given potentially explicit nature of their expected testimony)*; see also Doe*, 655 F.2d at 922 n.1 ("Where it is necessary . . . to protect a person from harassment, injury, ridicule or personal

embarrassment, courts have permitted the use of pseudonyms"). *But see United States v. Konrad,* No. 11–15, 2011 WL 1549494, at *9-10, (E.D. Pa. Apr. 19, 2011) (rejecting defendant's request to redact information regarding his medical diagnoses from court record to protect him from public stigma and humiliation, even though such information is "traditionally considered private rather than public" where, *inter alia*, defendant's diagnoses were already a matter of public record and defendant did not object to their initial disclosure).

In the context of requests for anonymity, courts tend to protect the identities of victims from public disclosure in court records upon a showing that disclosure will likely lead to violence or harassment. *See, e.g.*, *United States v. Troup*, No. 3:12-CR-36 JD, 2012 WL 3818242, *3 (N.D. Ind. Aug. 31, 2012) (unpublished) (finding that child-victim and multiple child-witnesses of pornography in a widely-publicized case could proceed under pseudonyms where "[t]he factual nature of this case makes it likely, even probable, that the children involved will be subject to harassment by their peers if their names are publicly associated with the case, and the government has introduced evidence showing that such reprehensible behavior has already occurred"); *see also United States v. Gangi*, 881 F. Supp. 820, 824 n.4 (E.D.N.Y 1995) (redacting portion of correspondence between defendant and court from opinion to prevent personal disclosures that could jeopardize defendant's or his family's safety). *But see Cousins*, 858 F. Supp. at 618 (sympathizing with government's concerns for witness safety related to public accessibility of trial transcript, but finding that proposal to redact full testimony of twenty-two witnesses was too broad and that government had not presented sufficient significant interests to outweigh public's right of access).

Here, the Court's disclosure of Jane Doe's private information in the Opinion will continue to cause Jane Doe further emotional and psychological harm and risk of humiliation and

embarrassment. Avoiding any additional such harms weighs heavily in favor of redacting information compromising Jane Doe's privacy from the Opinion.

> 2. *The Legislature and Judiciary's Recognition that the Information at Issue Warrants Protection Weighs in Favor of Redaction.*

As detailed above, Congress and the judiciary have repeatedly recognized the need to protect the privacy of crime victims throughout their involvement in the criminal justice system. *See, e.g.,* 18 U.S.C. § 3771; 18 U.S.C. § 3509; Fed. R. Crim. Proc. 49.1; Fed. R. App. Proc. 25(a)(5). These laws and rules reflect a commitment to preventing the unnecessary disclosure of private victim information in court records. This fact also weighs in favor of modifying the Opinion to remove Jane Doe's private information from public view. *See Starr*, 2011 WL 1796340, at *1 (finding that balance of competing interests favors sealing victim's restitution submissions where, *inter alia*, "the fact that both the legislature and the judiciary favor the protection of a victim's financial information, submitted in furtherance of restitution and the imposition of a fair sentence, weighs heavily in favor of shielding this information from public disclosure" (citing the CVRA, the Mandatory Victims Restitution Act, Fed. R. Crim. Proc. 32 and 49.1, and policies of the Judicial Conference of the United States)); *Curry* 2009 WL 395247, at *2 (finding that state laws affording special protection to victims of sex crimes "reflect a legislative judgment that the state has an interest in maintaining the confidentiality of court proceedings involving victims of sexual offenses" and considering the state's "strong public policy favoring the special protection victims of sex crimes and their privacy where sensitive and possibly embarrassing matters are concerned" when determining whether interests in nondisclosure justified restrictions to public access).

3.   *The Public's Interest in Protecting Victims' Rights Weighs in
     Favor of the Redaction.*

The general public has a substantial interest in protecting victims' rights and interests.
Beyond its broad interest in the physical and emotional wellbeing of crime victims, the public
has an interest in encouraging victim participation in the criminal justice system. Courts
recognize that protecting victims' privacy to encourage the reporting of crimes is a significant
interest that weighs in favor of the nondisclosure of a victim's identifying and private
information in court records. *See, e.g., Patkar*, 2008 WL 233062, at *6 (finding that setting aside
protective order barring disclosure of documents containing victim's private information would
undermine "the public interest in having victims of crimes—even those embarrassed by their
conduct—report offenses to law enforcement"); *Carson*, 2018 WL 4554465, at *2 ("The public
interest in victims coming forward to assist in prosecutions of crime is likely to suffer if victims'
privacy rights are not protected [by sealing documents replete with victim identifying
information]."); *Wilmink*, 2006 WL 456021, at *3 (noting that privacy interests of victims of
sexual abuse "support a compelling governmental interest" that weighs against the public right of
access to court records because "[i]f individuals are assured their identities will be protected in
situations like those at issue in this and related cases, they are more likely to come forward and
candidly recount their experiences"); *Cape Publications of City of Louisville*, 147 S.W.3d 731,
736 (Ky. Ct. App. 2003) (upholding policy of redacting identifying information of sexual assault
victims from publicly available incident reports upon finding that, *inter alia*, the public's interest
in disclosure did not outweigh the privacy interests of victims of sexual offenses coupled with
the compelling public interest of insuring victim safety and encouraging reporting); *see also
Florida Star*, 491 U.S. at 537 (noting that encouraging victims of sexual offenses to report these

offenses without fear of exposure is a "highly significant interest" that weighs in favor of punishing the publication of a rape victim's name).

### 4. The Proposed Modifications to the Opinion Are Narrowly Tailored to Protect Jane Doe's Legal Rights and Interests.

The narrow scope of Jane Doe's proposed modifications weighs in favor of the proposed changes. When restricting access to public court records, courts prefer to do so in a way that minimizes the burden on the public's right of access. As one court has explained, "[w]hen a court determines that interests favoring non-disclosure justify restricting the public's access, it must restrict access in a way that will minimize the burden on the public's right, for example, by sealing or redacting only those records or portions thereof that contain sensitive information." *Curry*, 2009 WL 395247, at *2.

Redacting a victim's name and other identifying information from a court document is precisely the type of narrow approach that courts favor. *See In re Providence Journal Co., Inc.*, 293 F.3d 1, 15 (1st Cir. 2002) ("Redaction constitutes a time-tested means of minimizing any intrusion on [the constitutional right of access]."); *Amodeo II*, 44 F.3d at 147 (stating "that it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document"); *Munir*, 953 F. Supp. 2d at 478 ("Careful redactions can appropriately balance the interests of confidentiality, free press, and an informed citizenry."); *Wilmink*, 2006 WL 456021, at *3 ("The very limited redaction plaintiff offers is precisely the type of narrowly tailored request our court of appeals has encouraged. The redacted names and identifying information here serve no useful public or investigative purpose."); *Doe v. Doe*, No. COA1701368, 2018 WL 6613818, *10, ---S.E. 2d--- (N.C. App. Ct. Dec. 18, 2018) ("In documents related to criminal proceedings, protecting the identities of minor victims of sexual abuse in documents is normally accomplished by redacting

the names and other specific identifying information of the minors and use of pseudonyms.");
*see also Curry*, 2009 WL 395247, at *2 ("Redacting the victim's identifying information [from
court records], although time consuming, would sufficiently protect the victim's privacy.").

Here, Jane Doe seeks removal of her name and certain personal details from the Opinion.
This narrowly tailored request minimizes the impact of any limitations on the public's right to
access the Opinion.

### iv. The Substantial Interests of Jane Doe and the Public in Ensuring Jane Doe's Privacy Outweigh the Public's Right of Access to an Unredacted Version of the Opinion.

The Court's decision as to whether it should redact the original Opinion to remove Jane
Doe's identifying information and other personal facts turns on whether the interests in redaction
outweigh the public's right of access to the original Opinion. As demonstrated above, Jane Doe
has substantial privacy rights and interests that courts find significant in such a balancing of
interests. The recognition by Congress and the judiciary of the importance of protecting victim
privacy also weighs in favor redacting the Opinion. Additionally, the public's interests in
protecting crime victims and in encouraging them to report crimes weigh in favor of granting
Jane Doe's motion.

With all of these considerations in mind, it is clear that the public's right of access to an
unredacted version of the Opinion is easily outweighed by the countervailing interests of Jane
Doe and the public in protecting Jane Doe's privacy. *See, e.g.*, *United States v. Corley*, No. 13-
CR-48, 2016 9022508, *2 (S.D.N.Y. Jan. 15, 2016) (ordering redaction of minor-victims' last
names in documents added to court record upon concluding that victims' privacy and safety
interests outweighed the public's right of access to court documents); *Wilmink*, 2006 WL
456021, at *3 (finding that interest of sex abuse victims in redacting their names and identifying

information from exhibits to pleading significantly outweighed the public's common-law right of access); *see Amodeo III*, 71 F.3d at 1050 (noting that the interest of innocent third parties weigh heavily in a courts balancing equation); *Starr*, 2011 WL 1796340, at *1 ("An individual's right to privacy is recognized as an exception to the public's right of access."); *State v. Densmore*, 624 A.2d 1138, 1143 (Vt. 1993) (noting that "the privacy interests of innocent third parties [including crime victims] may well present a compelling interest sufficient to outweigh a qualified First Amendment Right of access under certain circumstances"). As such, the Court should order the redactions and the substitution of redacted Opinion for the current version.

## III.    CONCLUSION

Jane Doe has clear privacy rights under the Constitution, common-law, and CVRA. Public disclosure of Jane Doe's identity and the private, intimate details of the criminal acts that she endured constitute an equally clear violation of these rights. Redaction of this information from the original Opinion will prevent the violation of these rights from continuing any longer. Therefore, Jane Doe respectfully requests this Court uphold her privacy rights and (1) withdraw the current version of *Graber v. Bobby* issued February 9, 2006; (2) issue a Redacted Opinion; (3) order that the Redacted Opinion supersede the current version; (4) direct the Clerk of Court to promptly substitute the Redacted Opinion for the current version in the Court's electronic filing system; (5) direct the Clerk of Court to ensure that the Original Opinion is no longer available in the cache of the Court's electronic filing system; (6) require the immediate removal of the current Opinion from any publicly available website that publishes it; (7) provide notice to any print publisher of the Federal Supplement that the Redacted Opinion be used in any future reprints; and any other relief this Court deems appropriate.

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Respectfully submitted,

/s/ Bobbie Yeager
Bobbie Yeager (0085165)
Ohio Crime Victim Justice Center
3976 North Hampton Drive
Powell, Ohio 43065
P: 614-848-8500
F: 614-848-8501
byeager@ocvjc.org
*Counsel for Crime Victim*

## CERTIFICATE OF SERVICE

I hereby state that a copy of the foregoing was served upon the following by ordinary US mail, electronic mail, and/or facsimile transmission on this 29th day of March, 2022:

Thomas E. Madden, Office of the Ohio Attorney General, Criminal Justice Section, Corrections Unit, Counsel for David Bobby, 30 East Broad St., 17th Floor Columbus, Ohio 43215;

*Pro Se* Defendant, John Graber, 702 5th Street NE, Canton, OH 44704.

Respectfully submitted,

/s/ Bobbie Yeager
Bobbie Yeager (0085165)
*Counsel for Crime Victim*